IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **EMF SWISS AVENUE LLC,** | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. **3:17-CV-2995-L** |
| **CITY OF DALLAS,** | § § § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff EMF Swiss Avenue, LLC's Application for Temporary Restraining Order (Doc. 1), filed October 30, 2017. After considering the motion, pleadings, evidence, and applicable law, the court, *sua sponte*, dismisses this action without prejudice for lack of subject matter jurisdiction.

## I. Background

Plaintiff EMF Swiss Avenue, LLC ("Plaintiff" or "EMF") filed this action on October 30, 2017, against Defendant City of Dallas ("Defendant" or "City"), asserting claims for (1) inverse condemnation and impermissible takings in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 17 of the Texas Constitution; and (2) promissory estoppel. With respect to this court's subject matter jurisdiction, EMF contends that this court "has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this suit concerns the federal question of whether the City of Dallas has committed a taking against EMF under the Fifth and Fourteenth Amendments to the United States Constitution." Complaint and Application for TRO ¶ 3. EMF asserts the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

its promissory estoppel claim. For relief, EMF seeks to recover direct and consequential damages, attorney's fees, and costs of suit. EMF also seeks injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunction enjoining the City from enforcing a "Stop Work Order" that stopped all construction by EMF on a multi-million dollar development project ("Project") on property located in Dallas County and owned by EMF. The relevant allegations and evidence, drawn from the Complaint and appendix filed in support, are as follows:

EMF is in the process of constructing a five-story, 253-unit multifamily dwelling at 4217 Swiss Avenue (the "Property"). Prior to commencing construction, EMF received the required approval and permits from the City. EMF began work on the project and invested more than $13.9 million in the project. Non-party Peaks Addition Home Owner's Association ("HOA") filed a complaint concerning the validity of the permits issued by the City, claiming they should not have been issued because they did not require the Project to conform to the City's ordinance addressing residential proximity slopes ("RPS") that emanate from other properties located in Dallas Planned Development District 298. The Director of Sustainable Development and Construction for the City ("Director") concluded that no RPS applied to the Project or the Property and, thus, the permits issued to EMF do not require EMF to conform to RPS. The HOA appealed this decision to the Board of Adjustment for the City (the "Board"), which upheld the Director's decision.

In March 2017, five months after the construction began, the HOA filed a lawsuit against the City and the Board seeking a writ of certiorari and judicial review of the Board's decision. *See Peaks Addition Homeowners Association v. City of Dallas, et al.*, Cause No. DC-17-02532, in the 134th Judicial District Court, Dallas County, Texas (the "State Court Action"). The HOA moved

for summary judgment in the State Court Action, and the City filed a cross-motion for summary judgment. EMF intervened in the matter on September 8, 2017. On September 11, 2017, the judge in the State Court Action granted final summary judgment for the HOA and ruled against the City.

Following issuance of the Final Judgment in favor of the HOA, on September 1, 2017, the City issued a "Stop Work Order" halting all construction on the Property. EMF responded by filing an Emergency Motion to Stay Enforcement of the September 11, 2017 Final Judgment. On September 18, 2017, the judge in the State Court Action, following a hearing, denied EMF's motion. EMF has appealed this adverse decision to the Fifth District Court of Appeals at Dallas, Texas, where it is pending.

On September 19, 2017, EMF filed a Motion to Determine Supersedeas Security in the State Court Action, asking the court to set the type and amount of supersedeas security in order for EMF to post adequate security and suspend enforcement of the court's final judgment during the appellate process. The motion was denied without explanation. EMF appealed the decision, and that appeal is also pending.

On October 30, 2017, EMF filed this lawsuit and in support of its Application for TRO contends:

> This lawsuit seeks relief narrowly-tailored in scope and of the highest urgency. The [City] has, *sua sponte* and prematurely issued, a Stop Work Order precluding all construction of any kind on a multi-million dollar development Property located in Dallas County. The preclusive effects of this Stop Work Order are disastrous and have caused and will continue to cause irreparable harm to EMF and the construction project on its Property through indefinite construction delays, dispersal of the construction workforce, potential lender defaults, and lost construction capital and pricing. The need for injunctive relief, therefore, is immediate and necessary to enjoin the City's impermissible taking of EMF's Property in violation of EMF's rights under Texas law and the United States Constitution.

Complaint and Appl. for TRO ¶ 6.

## II. Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

## III. Analysis

Having reviewed EMF's Complaint and Application for TRO, as well as the appendix submitted in support, the court concludes it lacks federal subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine and, alternatively, because Plaintiff's federal takings claim is not ripe.

### A. The *Rooker-Feldman* Doctrine

Because the *Rooker-Feldman* doctrine is jurisdictional, the court must address this issue first. As summarized by the Fifth Circuit:

> "Reduced to its essence, the *Rooker–Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments" except when authorized by Congress. *Union Planters Bank Nat'l Ass'n v. Salih,* 369 F.3d 457, 462 (5th Cir.2004) (internal quotation marks and citation omitted); *see generally* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed. 2002 & Supp.2012). The Supreme Court has explained that the doctrine is a narrow one and "is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

*Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).

In seeking injunctive relief, EMF informs the court that:

> [it] does not seek this court to enjoin any actions of the State Court Judge, the State Court Final Judgment, or interfere in the appellate process thereof. Rather, EMF

> contends that the City's Stop Work Order was issued independently of the State Court Final Judgment and EMF now seeks to enjoin the deleterious effects of the Stop Work Order or any actions in reliance thereon.

Compl. and Appl. for TRO at 11 note 6.[*] Plaintiff's contention that it is not asking this court to interfere with or nullify the trial court's decision granting summary judgment in favor of the HOA or to interfere with the appellate process is not persuasive and contradicts its contentions made to the state district court in seeking to stay enforcement of the final judgment in favor of the HOA. For example, in its Emergency Motion to Stay Enforcement of the September 11, 2017 Final Judgment filed in the State Court Action, EMF argued that the "*Court's Final Judgment and the resulting September 14, Stop Work Order imposed by the City would cause irreparable and immediate injury not only to EMF, but also to its third- party subcontractors and their workers.*" See Intervenor's Emergency Mot. to Stay Enforcement of September 11, 2017 Final Judgment at 2 filed in *Peaks Addition Homeowners Association v. City of Dallas, et al.*, Cause No. DC-17-02532, in the 134th Judicial District Court, Dallas County, Texas. EMF further requested in its prayer for relief that "the Court grant [its] Motion and stay any enforcement of the September 11, 2017 Final Judgment and the resultant Stop Work Order pending [the Court's] consideration of [its] Motion for New Trial and other post-judgment motions." *Id.* at 11. Clearly, and as illustrated by EMF's numerous attempts to stay enforcement of the judgment and, concomitantly, the Stop Work Order, the Stop Work Order and the court's September 11, 2017 final judgment are inextricably intertwined. To suggest otherwise would smack of a legal fiction.

---

[*] Although the state district court judge remarked that he never ordered the City to issue a Stop Work Order on the Project, a fair reading of his order granting summary judgment in the HOA's favor and ruling against the City would cause a reasonable person to conclude that the permits should never have been issued, which would necessarily require a work stoppage on the Project.

**Memorandum Opinion and Order - Page 6**

In short, based on the court's reading of Complaint and Application for TRO, as well as the court's review of the documents filed in the State Court Action, the court **determines** that Plaintiff is inviting the court to review and reject a final order of the state court that is currently on appeal. Pursuant to the *Rooker-Feldman* doctrine, this court lacks subject matter jurisdiction over this lawsuit. Moreover, even were the court to conclude that the *Rooker-Feldman* doctrine did not deprive it of subject matter jurisdiction, the court **determines** that Plaintiff's federal Takings Clause claim is not ripe.

## B. Ripeness

The Takings Clause of the Fifth Amendment made applicable to the States through the Fourteenth Amendment, *Chicago, B & Q.R. Co. v. Chicago*, 166 U.S. 228 (1897), directs that "private property" shall not "be taken for public use without just compensation." U.S. Const. amend. V. The Supreme Court has recognized that a taking may occur when a governmental entity exercises its power of eminent domain through formal condemnation proceedings, *see, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425-26 (1982), or deprives a property owner of all economically beneficial use of his property. *See, e.g., Lucas v. South Carolina Coastal Comm'n*, 505 U.S. 1003, 1019 (1997); *Nathan v. California Coastal Comm'n*, 483 U.S. 825 (1987).

The court has an independent duty to determine whether Plaintiff's Takings Clause claim is ripe. *See Urban Developers LLC v. City of Jackson, Mississippi*, 468 F.3d 281, 292 (5th Cir. 2006) (*sua sponte* raising issue of whether a Takings Clause claim was ripe). "Ripeness is a question of law that implicates [the] court's subject matter jurisdiction." *Id.* (citations omitted).

As summarized by the Fifth Circuit:

> The Supreme Court has adopted a two-prong test for ripeness under the Fifth Amendment's Takings Clause, explaining that such claims are not ripe until (1) the

**Memorandum Opinion and Order - Page 7**

> relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner; and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides.

*Id.* at 292-93 (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)); *see also Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 385 (5th Cir. 2001) ("[F]or a federal takings claim to become ripe, the plaintiff is required to seek compensation through the procedures the state has provided unless those procedures are unavailable or inadequate.").

In this action, Plaintiff, invoking federal question jurisdiction, is alleging that the Stop Work Order, resulting from the final judgment in favor of the HOA in the State Court Action, constitutes an inverse condemnation and impermissible takings in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 17 of the Texas Constitution. Under *Williamson*, however, Plaintiff may not bring his federal Takings Clause claim until he has sought "compensation through the procedures the State has provided for doing so." 473 U.S. at 194; see also *Vulcan Materials*, 238 F.3d at 385 ("[F]or a federal takings claim to become ripe, the plaintiff is required to seek compensation through the procedures the state has provided unless those procedures are unavailable or inadequate."). Under Texas law, EMF has an inverse condemnation suit available to it but has not pursued this avenue, choosing instead to file its claim in federal court. *See Trail Enters., Inc. v. City of Houston*, 957 S.W.2d 625, 630-31 (Tex. 1997) ("If the government appropriates property without paying adequate compensation, the owner may recover the resulting damages in an 'inverse condemnation suit.'").

Plaintiff has failed to show that state procedures are either unavailable or inadequate. Instead, Plaintiff has brought his federal Takings Clause claim and his state law claim in one federal

action, with his state law claim before the court as pendent to its federal claim. As stated by the Fifth Circuit, in a case where a plaintiff sought to bring both a state and federal takings claim in federal court based, and where jurisdiction was based entirely on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367:

> [A] federal district court could not exercise jurisdiction over a state law claim that is pendent to a claim over which the federal courts would have no jurisdiction. Assuming a takings claim were the only federal claim asserted in the complaint, the court could not exercise jurisdiction over the pendent state compensation claim, for the federal takings claim on which jurisdiction over the state claim would be contingent would not yet be ripe. The circularity of plaintiffs' suggested procedure proves fatal.

*Samaad v. City of Dallas*, 940 F.2d 925, 933-35 (5th Cir. 1991), *abrogated on other grounds by Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 728 (2010). In sum, because Plaintiff failed to seek just compensation for the alleged inverse condemnation or taking of its property by a regulatory authority through procedures available under state law, its federal Takings Clause claim is not ripe for adjudication. *See Williamson*, 473 U.S. at 195; *Vulcan Materials*, 238 F.3d at 385-86.

## IV. Conclusion

For these reasons, the court, *sua sponte*, determines that it lacks federal subject matter jurisdiction. Accordingly, this action is **dismissed without prejudice**.

**It is so ordered** this 8th day of November, 2017.

                                          Sam A. Lindsay
                                          United States District Judge